[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a May 24, 1999 judgment entry of the Perrysburg Municipal Court in which the court granted summary judgment to appellees, Richard Corwin ("truck driver") and David Marx dba Marx Trucking ("trucking company"), on claims for breach of contract and indemnification or contribution filed by appellant, St. Paul Fire Marine Insurance Company. Appellant has presented one assignment of error for consideration:
 "THE TRIAL COURT ERRED BY GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT."
All courts in Ohio are governed by the provisions of Civ.R. 56(C) when considering whether summary judgment can be granted in a case. Civ.R. 56(C) states, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
Keeping this standard of review in mind, we now consider the facts, procedure and arguments in this case.
All parties agree to the following facts in this case. On October 7, 1992, the trucking company entered into a contract with one of appellant's insureds ("the leasing company"). The contract included provisions that required the trucking company to indemnify the leasing company under certain circumstances. One circumstance was listed in paragraph twenty-one of the contract and reads:
"21. DISPLAY OF CERTIFICATE NUMBERS
"Contractor acknowledges and agrees:
 "A. To display the Certificate numbers and/or name of Carrier on the motor vehicle equipment set forth at Exhibit A; ONLY WHILE ENGAGED IN PROVIDING TRANSPORTATION SERVICES HEREUNDER, AND AT NO OTHER TIME.
 "B. That any damage/loss of any description whatsoever suffered/incurred by Carrier as a result of Contractor's violation of the above shall be subject to Carrier's indemnification, and set-off rights herein."
The indemnification clause in the contract provides:
"9. CARRIER'S RIGHT TO INDEMNIFICATION
"Contractor acknowledges and agrees:
 "To indemnify and save harmless carrier from any/all claims, suits, losses, fines or other expenses arising out of, based upon, or incurred in any manner or fashion because of injury to any person(s), or damage to property sustained or which may be alleged to have been sustained, by reason of any negligence or alleged negligence, on the part of Contractor, its agents, servants and/or employees. No provision of this paragraph shall be construed in any way to limit the liability of Carrier to the public in connection with the use of the motor vehicle equipment set forth at Exhibit A, under this Agreement.
"IMPORTANT!
 "CONTRACTOR HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS ACCEPTED FULL AND TOTAL RESPONSIBILITY/LIABILITY FOR ANY/ALL INJURY/DAMAGE TO THE PERSON AND/OR PROPERTY OF ANY/ALL THIRD PARTIES WHILE ENGAGED IN PROVIDING TRANSPORTATION SERVICES UNDER THIS AGREEMENT.
 "B. Any amounts/funds advanced by Carrier on Contractor's behalf, to any third parties, firms, corporations, etc., in full or partial satisfaction of any such claims, suits/demands, set forth at Paragraph A hereof, shall be a set-off against any/all funds/compensation/payments due Contractor under this Agreement, together with the Escrow Account established at Par. 17 hereof.
 "C. To indemnify and save harmless Carrier, from any/all claims against it, of whatsoever nature or description, by agents, servants and/or employees of Contractor."
On March 4, 1993, the trucker had an accident on State Route 73, in Clearcreek, Warren County, Ohio, that caused $7,000 worth of damage to a third party's vehicle. At the time of the accident, the truck was empty, but the leasing company's certification numbers and logo were displayed.
Appellant asserted in the trial court that it was contacted by the leasing company after the accident. Appellant said it in turn asked the trucking company's insurer if its policy with the trucking company provided coverage for the damages to the property of the third party. Appellant presented an affidavit and an attached letter to show that the trucking company's insurer said its policy did not provide any coverage. No dispute exists that appellant paid the third party $7,000 to compensate the third party for property damage caused by the accident. Appellant then stepped into the shoes of the leasing company, through subrogation rights under its insurance contract with the leasing company, and filed this suit against the trucker and the trucking company.
Appellant alleged in its complaint that the trucker and the trucking company breached the contract with the leasing company when they operated a truck with the leasing company's certification numbers and logo even though the truck was empty. Appellant said that because of the breach of the contract with the leasing company, the trucker and the trucking company are liable for indemnification and/or contribution to appellant for the $7,000 it paid to the third party.
The trucking company and trucker filed an answer and a motion to dismiss for failure to state a claim. In support of their motion to dismiss, they presented documentation to show that their insurer, with whom they had an insurance policy at the time of the accident, had been declared insolvent on September 18, 1997. Since the trucking company is a Michigan resident, they argued that Michigan law applies and that it bars appellant from seeking indemnification from the insureds of an insolvent insurer.
Appellant responded to the motion to dismiss that was converted to a motion for summary judgment. Appellant argued that Michigan law did not bar their action in this case, because the law relied upon by the trucker and the trucking company applies to claims arising from insurance contracts, and the claim in this case arises from the contract between the trucking company and the leasing company, not from an insurance contract. Appellant also argued that the trucking company's insurer denied that its policy provided any coverage to the trucker or the trucking company for the accident, so there was no "covered claim" that would trigger the Michigan statutory law cited by the trucker and the trucking company.
The relevant Michigan statutes relied upon by the trucker and the trucking company in the trial court were as follows:
"500.7925. Covered claims, definition
 Sec. 7925. (1) `Covered claims' means obligations of an insolvent insurer which meet all of the following requirements:
 "(a) Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer.
"(b) Were unpaid by the insolvent insurer.
 "(c) Are presented as a claim to the receiver in this state or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.
 "(d) Were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed.
 "(e) Arise out of policy contracts of the insolvent insurer issued for all kinds of insurance except life and disability insurance.
 "(f) Arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer.
"(2) Covered claims shall not include any of the following:
 "(a) Obligations to refund unearned premiums above the first $500.00 of unearned premiums from each person from any 1 insolvent insurer. The maximum amount of unearned premiums which shall constitute a covered claim shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner.
 "(b) Obligations incurred after the expiration date of the insurance policy, after the insurance policy has been replaced by the insured, or after the insurance policy has been canceled by the association as provided in this chapter.
 "(c) Obligations which arise out of sections 2001 to 2050, or similar provisions of law in another jurisdiction.
 "(3) Covered claims shall not include obligations to an insurer, insurance pool, underwriting association, or to a person who has a net worth greater that 1/10 of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year.
 "(4) Covered claims shall not include any portion of a claim which is in excess of an applicable limit provided in the insurance policy.
 "(5) Covered claims shall not include that portion of a claim, other than a worker's compensation claim, which is in excess of 1/20 of 1% of the aggregate premiums written by member insurers in this state in the preceding calendar year.
 "(6) Covered claims shall not include adjustment fees and expenses, attorneys' fees and expenses, court costs, interest, or bond premiums if the fees, expenses, costs, interest, or premiums were incurred by the insolvent insurer before the receiver was appointed." and
 "500.7931. Payment and discharge of covered claims; assumption of insolvent insurer's rights; credits; continuance of coverage; cancellation of policies
 Sec. 7931. (1) The association shall pay and discharge covered claims for the amount by which each covered claim exceeds $10.00. The association may pay or discharge the claims directly, through a servicing facility, or through a contract for reinsurance or transfer of liabilities with a member insurer, in accordance with the plan of operation.
 "(2) The association shall be a party in interest in all proceedings involving a covered claim and shall have the same rights as the insolvent insurer would have had if not in receivership, including the right to appear, defend, and appeal a claim in a court of competent jurisdiction; to receive notice of, investigate, adjust, compromise, settle, and pay a covered claim; and to investigate, handle, and deny a noncovered claim. The association shall not have a cause of action against the insureds of the insolvent insurer for any sums it has paid out, except those causes of action which the insolvent insurer would have had if the sums had been paid by the insolvent insurer, or except as otherwise provided by this chapter.
 "(3) If damages or benefits are recoverable by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or from the motor vehicle accident claims fund, or a similar fund, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter. If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of this state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, the damages recoverable shall be a credit against a covered claim payable under this chapter. An insurer or a fund may not maintain an action against an insured of the insolvent insurer to recover an amount which constitutes a credit against a covered claim under this section. An amount paid to a claimant in excess of the amount authorized by this section may be recovered by an action brought by the association.
 "(4) The association shall continue coverage for covered claims under each insurance policy of the insolvent insurer that was in force on the date the receiver was appointed until the insurance policy has expired in accordance with its terms, has been replaced by the insured, or has been canceled by the association as provided in this chapter, but in no event for more than 30 days after the date the receiver was appointed."
The trial court considered the above quoted statutes and the arguments of the parties and concluded that the trucker and the trucking company were entitled to summary judgment. The trial court's judgment provided, in pertinent part:
 "Plaintiff's complaint arose when defendant's insurance company denied coverage of plaintiff's insured's claim and thereafter the company was liquidated. Plaintiff paid their insured's claim and now seeks subrogation from defendants. Plaintiff contends this is a breach of contract action because defendants were, at the time of the accident, not in plaintiff's insured's employment because defendants were unloaded. Plaintiff points to defendant's insurance company's decision to deny plaintiff's insured's claim as proof that the claim does not involve the obligation of an insolvent insurer and therefore, state of Michigan law does not apply. (Defendant's are residents of Michigan).
 "The court finds defendant's insurance company's denial of their claim not relevant to this case. Indeed, it would be highly probable that an insurance company about to be liquidated would deny claims prior to its Bankruptcy whether the claim should have been covered or not.
 "The court finds that Michigan statute MCL 500.7925 does apply. Consequently, the claim against defendants is a covered claim within the meaning of the statute. The statute provides that where, as here, a claim has been paid by another insurer, that insurer is barred from subrogation. Therefore, defendant's motion for summary judgment is granted as a matter of law."
Appellant argues on appeal that the trial court erred in two respects when it granted summary judgment to the trucker and the trucking company. First, appellant says, the trial court erred when it ruled that the claims appellant brought in this case are "covered claims" pursuant to MCL 500.7925. Appellant argues that MCL 500.7925 does not apply in this case, because its claims do not arise out of the insurance policy contract the trucking company's now insolvent insurer issued to the trucking company; instead, they arise out of the provisions in the leasing contract the trucking company entered into with the leasing company. Appellant says it has presented information that at least shows the existence of a material question of fact on whether or not the trucking company had any insurance through the now insolvent insurer that applied to the trucker's accident. Appellant says that the trial court was wrong when it said the trucking company's insolvent insurer denied a claim. Appellant says no claim was ever made because the trucking company's insolvent insurer indicated there was no coverage available against which a claim could be made.
Second, appellant says that the trial court erred when it accepted the assertion by the trucker and the trucking company that they did have coverage for the accident under the insurance policy with the insolvent insurer. Appellant argues that the trucker and the trucking company were estopped from claiming coverage for the accident from their policy with the insolvent insurance company in this case, because the insolvent insurance company itself said there was no liability coverage whatsoever available to the trucker or the trucking company under its policy.
Appellant says the trucker and the trucking company now claim coverage, but "never addressed the issue of the [insolvent insurer's] denial of coverage." Appellant says that the trial court speculated, without any supporting evidence, "that any insurance company about to go insolvent would deny all claims."
The trucker and the trucking company respond that because the trucking company is a Michigan resident, and because its insurance company is insolvent, Michigan statutory law applies to bar appellant's claim against them for indemnification. They say that MCL 500.7925(3) provides, in pertinent part: "Covered claims shall not include obligations to an insurer * * *." They say that since appellant is an insurer, it cannot get any payment for the amount the insolvent insurer should have paid. Further, they argue that MCL 500.7931(3) provides that a set off or credit must be applied to any covered claim for benefits already paid to a claimant under another insurance policy, so the amount appellant paid to the third party would completely extinguish any further liability of the trucker or the trucking company. In addition, they argue that MCL 500.7931(3) prevents an insurance company from suing the insured of a now insolvent insurer for the amounts the insolvent insurer should have paid.
Finally, the trucker and the trucking company also argue that the conclusion that Michigan statutory law applies is not "altered by the earlier exchange of letters between Appellant and the liquidated carrier * * *." They say that appellant has not presented any credible evidence to show that the insolvent insurer denied coverage to the trucker and the trucking company for the accident. They argue that the letters submitted by appellant are hearsay and should not be considered. They say that the trial court correctly decided that Michigan statutes applied to bar appellant's claim regardless of any position asserted by the insolvent insurer on the question of whether its policy terms applied to provide coverage for the accident. They conclude: "Once the trial court elected to give no weight to those letters, its specific reasoning (i.e. that an insurance company about to go insolvent may unreasonably deny claims), represents mere dicta, and is not evidence of the trial court abusing its discretion."
After carefully reviewing the record, the arguments of the parties and the applicable law, we conclude, for the following reasons, that summary judgment should not have been granted in this case. First, we note that pursuant to the language used in MCL 500.7925, a covered claim is one which arises out of a contract between an insolvent insurer and its insured. Therefore, it is essential in this case to determine whether or not the trucking company did have liability coverage from its insolvent insurer for the accident. If the trucking company did have coverage from the insolvent insurer, the provisions of MCL500.7925 would apply, and appellant would be barred by the provisions in MCL 500.7925(3) and in MCL 500.7931(3) from suing the trucker and the trucking company for indemnification. If the trucking company did not have coverage from the insolvent insurer, the existence of a policy with a now insolvent insurer would be irrelevant to the claims filed by appellant in this case, and nothing in the Michigan statutes cited in the trial court would prevent appellant from pursuing its breach of the leasing contract claim against the trucking company.
Second, we note that appellant did provide sufficient evidence to place in question whether or not the trucking company had coverage from the insolvent insurer for the accident. Appellant provided an affidavit of its senior recovery analyst who averred that the insolvent insurer informed a claims examiner that "there is no liability coverage available for David Marx d/b/a Marx Trucking as a result of the March 4, 1993 accident." Appellant demonstrated, therefore, that whether or not the information it received was accurate, it was told by the insolvent insurer that the trucking company had no liability coverage for the accident.
Third, the trial court's conclusion that "MCL 500.7925 does apply" necessarily contains a finding that the trucking company did have coverage from the insolvent insurer, since a covered claim arises out of an insurance contract between an insolvent insurer and its insured. The only evidence presented by the trucker and the trucking company to support its assertion that it did have coverage for the accident was an affidavit of David Marx, in which he averred that he did have vehicle liability insurance coverage through his now insolvent insurer on the date of the accident, and to which he attached a copy of a certificate of insurance. A review of the certificate of insurance shows that it fails to affirmatively establish that the terms of the policy from the now insolvent insurer would have entitled the trucker and the trucking company to insurance coverage for the accident.
Our review of the record shows that appellant placed in question whether the insolvent insurer owed coverage to the trucker and the trucking company for the accident. The trucker and the trucking company responded that they did have coverage for the accident from their now insolvent insurer. The Michigan statutory law that the trucker and the trucking company relied upon to bar appellant's claims is only triggered if an insolvent insurance company actually owed some coverage for a claim. Therefore, in this case a genuine question of fact remains: did the insolvent insurer owe liability coverage to the trucker and the trucking company for the accident? Without the terms of the policy, no definitive ruling can be made on that question. Accordingly, appellant's sole assignment of error is well-taken because at this juncture in the case summary judgment cannot be granted.
The judgment of the Perrysburg Municipal Court is reversed, and this case is remanded for further proceedings consistent with this decision. Appellees are ordered to pay the court costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________________________ PETER M. HANDWORK, J., JUDGE.
 __________________________________________ MELVIN L. RESNICK, J., JUDGE.
 __________________________________________ JAMES R. SHERCK, J., JUDGE CONCUR.